UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

Mark and Desiree Clucas,

      Plaintiff,

-against-

Santander Consumer USA, Inc.,

      Defendants.

CIVIL ACTION NO.: 3:10-cv-02151 (B)

---

### AFFIDAVIT OF SERGEI LEMBERG IN JOINDER
### TO PLAINTIFFS' COUNSEL'S MOTION TO WITHDRAW

**STATE OF CONNECTICUT**  )
           ) ss.:
**COUNTY OF FAIRFIELD**   )

**SERGEI LEMBERG**, being first duly sworn, deposes and says:

1. I am an attorney duly admitted in the States of Connecticut and New York and in the Commonwealth of Massachusetts. I am admitted to the United States District Court for the District of Connecticut, United States District Courts for the Southern, Eastern Northern and Western Districts of New York and United States District Court for the District of Massachusetts. I am also admitted to the First, Second, Third and Ninth Circuit Courts of Appeal. I have never been a subject of investigation or censure by any bar of any State or Federal Court where I have practiced law since being first admitted to the bar in 2001.

2. Since 2006, I have been a sole managing member of Lemberg & Associates LLC, a law firm engaged primarily in the practice of representing consumers in Fair Debt Collection, Fair Credit Reporting and lemon law matters.

3. I employ a number of associates and of-counsel licensed to practice in various jurisdictions of the United States. When clients contact us, they execute a Legal Services Agreement with the firm, and their cases are then handled by associates or of-counsel attorneys licensed to practice in the jurisdiction through the firm and using firm computers, resources and paralegal support.

### A. Clucas Matter

4. On or about July 13, 2010, Marc Clucas, a resident of North Carolina, contacted the firm at the suggestion of a relative. He was looking to bring a case against Santander, which is located in Texas.

5. At the time, we had no office in North Carolina but offered Mr. Clucas the option of bringing a case in Texas, provided he be willing to travel there.

6. He agreed and executed a Legal Services Agreement which provides in pertinent part:

> 2. LEGAL SERVICES TO BE PROVIDED. The Attorneys will represent the Client regarding debt collector abuse claims. Client will be truthful and cooperative with Attorneys and will keep Attorneys informed of changes in Client's address, telephone numbers and whereabouts. Client understands that Attorneys cannot and do not guarantee any result or outcome in this matter.
>
> 5. COURT COSTS AND LITIGATION EXPENSES. We will advance all costs of litigation. If a settlement is reached, Debt Collectors will be responsible for all litigation expenses. If there is no recovery, YOU WILL OWE US NOTHING.

7. Pursuant to Par.5 of the Agreement, we regularly advance court costs and litigation expenses such as filing fees, process server costs, copying fees, transcript costs, reporters' fees, research and expert witness fees. This provision is necessary in order to enable consumers to bring cases in court against defendants who almost always have more money to fight cases.

8. Travel costs are not, and never were, included with the 'litigation costs' the firm agrees to advance. On occasion, although the firm has no legal or ethical obligation to do so, the firm does advance travel costs to clients who are not able to appear at deposition or at court. Requests for travel cost advances must in each instance be pre-approved by me personally. The same holds true for attorneys travelling on business.

### B. Travel Cost Advances Made to Clucas

9. On August 8, 2011, I received a request for approval of an advance in the Clucas matter related to the attendance at depositions and mediation by the plaintiffs in this action in Dallas, Texas.

10. The request totaled just a little shy of $3000 for airplane tickets, and I was told that, in addition, the clients had "requested" a car and a hotel.

11. Given that this was the largest travel advance in the history of the firm's 4996 client matters, I asked the accounting department to pull the following accounting history:

| 3091-001 Clucas, Mark | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Credit Card Charge | 10/26/2010 | | Court filing fee | 1600 · Advance Client Costs | 350.00 | 350.00 |
| | Check | 12/29/2010 | 4101 | Process server fee - Invoice# 2010009990 | 1600 · Advance Client Costs | 75.00 | 425.00 |
| | Check | 03/12/2011 | 4364 | Travel expense | 1600 · Advance Client Costs | 389.90 | 814.90 |
| | Check | 04/21/2011 | 4517 | Travel expense | 1600 · Advance Client Costs | 917.37 | 1,732.27 |
| | Check | 05/15/2011 | 4604 | Court reporting fee - deposition | 1600 · Advance Client Costs | 605.46 | 2,337.73 |
| | Credit Card Charge | 06/02/2011 | | Travel expense | 1600 · Advance Client Costs | 361.28 | 2,699.01 |
| | Credit Card Charge | 06/02/2011 | | Travel expense | 1600 · Advance Client Costs | 361.28 | 3,060.29 |
| Total 3091-001 Clucas, Mark | | | | | | 3,060.29 | 3,060.29 |
| | | | | | | 3,060.29 | 3,060.29 |

12. I then inquired of Diana Larson specifically about the two charges from 6/2/2011, which appeared to me to be advances for airline tickets duplicative of previous charges. I was

3

told that the advance was for airline tickets for the deposition of Mrs. Clucas (which I had pre-approved) but that the clients refused to appear at the deposition because they had no babysitter.

13. I asked why there were two tickets as opposed to one, and the response was that Mrs. Clucas has a fear of flying and hence had conditioned her attendance on being accompanied by Mr. Clucas.

14. I inquired of Ms. Larson whether these clients understood that the total damages under the Fair Debt Collection Practices Act are $1000. I discussed with Ms. Larson a prior settlement offer in which the clients' full statutory damages would have been covered, and which the clients apparently rejected according to the file notes.

15. Ms. Larson assured me that this information had been conveyed to the clients multiple times.

16. At this juncture, I declined to approve further travel cost advances and offered to contact the clients to explain my reasoning.

**C. August 8, 2011, Conversation with Mr. Clucas**

17. In the morning of August 8, 2011, I sent an email and telephoned the Clucases to explain that no further travel cost advances would be made. I stated that my understanding was that they were ordered to appear at the mediation this Friday and that there are depositions scheduled for Thursday but that the costs for travel would have to be borne by them.

18. In the conversation I explained to them that since they failed to appear at deposition the first time on July 1, 2011, causing a net loss to the firm of $722, any possible or

conceivable obligation I had to advance money to them was extinguished and that they would be required to make their own travel arrangements either by plane, bus or car.

19. I explained to Mr. Clucas that even though the distance between Charlotte and Dallas is 1000 miles, this distance is easily drivable in one or perhaps one and half days and that they ought to undertake to comply with the Court's order and be present in Dallas forthwith.

20. During the conversation Mr. Clucas was hostile, abusive, screaming and yelling obscenities.

**D. Larsons' Motion To Withdraw**

21. Under the circumstances, I believe the Larsons' Motion to Withdraw is fully warranted, and I join it with the additional request to be relieved of any further obligation to represent these clients.

22. The Larsons both actually and reasonably perceive a potential threat to their personal safety through not only this voicemail message, but the cumulative history of abusive, hateful, cursing tirades directed at the Larsons and which the Larsons have endured from Mr. Clucas for many months.

23. I have now personally spoken on the telephone with Mr. Clucas and do not believe that either I nor any lawyer who works for me, nor any lawyer whom I know, would undertake to represent these clients in this case.

24. If the Clucases fail to appear at the depositions and mediation, their failure would constitute a failure to cooperate under our Legal Services Agreement with them.

_____
Sergei Lemberg

Subscribed and sworn to
before me this 9 day
of August, 2011

_____, Commissioner of Superior Court of CT
Notary Public or Commissioner of Deeds